IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRINA WILLIAMS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:17–01646–JMC |
| WEXFORD HEALTH SOURCES, INC., *et al*, | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This suit arises out of allegations of violations of the Family and Medical Leave Act ("FMLA") asserted by Plaintiff Trina Williams ("Plaintiff" or "Ms. Williams") against Defendants Wexford Health Sources, Inc., ("Wexford"), Mark Blewett, Chinyere Agbayi, and Aminata Jalloh (collectively, the "Defendants"). The parties consented to proceed before a magistrate judge for all proceedings pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. (ECF Nos. 22, 23). Currently pending before this Court is Defendants' Motion for Summary Judgment. (ECF No. 46). The Court has reviewed Defendants' Motion, as well as Plaintiff's Opposition thereto and Defendants' Reply in Support thereof. (ECF Nos. 53, 56). No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Defendants' Motion, (ECF No. 46), is DENIED.

## I. BACKGROUND

Wexford Health Sources, Inc. provides healthcare services to correctional and other institutions across the United States. (ECF No. 46–1 at 2). On October 28, 2015, Trina Williams was hired by Wexford and began working at the Maryland Correctional Institution for Women in

Jessup, Maryland ("MCIW"). *Id.* Ms. Williams had applied to Wexford at the suggestion of Aminata Jollah, a longtime neighbor of Ms. Williams's parents and the Health Services Administrator for Wexford at MCIW. *Id.* Ms. Williams was originally hired as a per diem nurse ("PRN"), but began working as a full-time Certified Nursing Assistant ("CRN") on January 26, 2016. *Id.* Her work hours were scheduled from 8:00 a.m. to 4:30 p.m. Monday through Friday. *Id.* Ms. Jalloh was Ms. Williams's next-level supervisor, although Ms. Williams directly reported to Chinyere Agbayi as the Assistant Director of Nursing. *Id.*

On November 29, 2016, Ms. Williams notified Wexford that she required intermittent leave under the Family and Medical Leave Act to care for her ailing mother. (ECF No. 46–1 at 3). Ms. Williams submitted the necessary documentation on January 4, 2017 and Wexford approved Ms. William's request for intermittent leave under the FMLA on January 16, 2017. *Id.* On March 15, 2017 around 9:00 p.m., Ms. Williams called Ms. Agbayi to inform her that Ms. Williams would need to take leave the next day to escort her mother to a scheduled doctor's appointment.[1] *Id.* at 4. Ms. Williams then called Ms. Jalloh and left her a voicemail message, explaining that she had requested FMLA leave and Ms. Agbayi had denied the request. *Id.* Thereafter, the three women participated in a number of phone calls with each other, during which Wexford alleges Ms. Williams became upset and used foul language and Ms. Williams alleges that she was told she was not allowed the leave for March 16, 2017. *Id.* at 4–5; (ECF No. 53–1 at 3). Wexford further asserts that, by the end of the phone conversations, it was clear that Ms. Williams would not be at work on March 16, 2017. (ECF 46–1 at 4–5).

The next morning (March 16) at around 9:00 a.m., Ms. Jalloh left Ms. Williams a voicemail to inform her that: (1) Ms. Williams would not be permitted to return to work until she

---

[1] Although the doctor's appointment was previously scheduled, Ms. Williams's brother was originally planning to take their mother to the appointment. Ms. Williams's brother informed her that she would need to take their mother to the scheduled appointment at 8:00 p.m. on March 15, 2017. (ECF No. 53–1 at 3).

2

met with Ms. Jalloh; (2) Ms. Jalloh was first available to meet on March 17; and (3) Ms. Williams should return Ms. Jalloh's call so that a time for the meeting could be finalized. (Ex. 1 to Decl. of Aminata Jalloh, ECF No. 46–2). Ms. Williams alleges that she returned Ms. Jalloh's call and left a voicemail, sent text messages later that day, and called again several times, but Ms. Jollah never answered and a time for the proposed meeting on March 17 was never confirmed. (ECF No. 1 at 6; 53–1 at 4–5). As instructed by Ms. Jalloh in her voicemail, Ms. Williams did not report to work at any time on March 16. (Ex. 1 to Decl. of Aminata Jalloh, ECF No. 46–2). She also did not report for her scheduled shifts on March 17, 20, and 21. (ECF No. 46–1 at 6).[2] Ms. Williams claims that she was not contacted by anyone from Wexford on any of those three days, and so finally contacted Mark Blewett, Director of Human Resources for Wexford. (ECF No. 53 at 5). Ms. Williams asserts that she told Mr. Blewett she had lost her identification badge the previous week, and that he told her he would look into her employment status. *Id.* Ms. Williams did not hear back from Mr. Blewett, and so left him a voicemail "stating that she was removed from the work schedule and did not know why" a few days later. (ECF No. 1 at 6; 53–1 at 5). On April 5, 2017, Ms. Williams claims she received a call from Mr. Blewett in which he informed her that her employment had been terminated. *Id.*

After finding Ms. Williams's employee identification badge under the door of Wexford's administrative office at MCIW, and taking into consideration her three absences, Ms. Jalloh informed Mr. Blewett that Ms. Williams's behavior constituted a voluntary resignation. (ECF No. 46–1 at 6). Thereafter, due to multiple conversations between Ms. Jalloh and Jayme Litterini, Senior Human Resources Generalist for Wexford, an Employee Separation Notice form was created for Ms. Williams. *Id.* Although Ms. Jalloh originally noted three termination

---

[2] Wexford's Maryland Region Time and Attendance Guidelines explains that "the third instance of no call/no show within a rolling 12 month period will result in termination of employment." (ECF No. 46–1 at 7).

reasons on the form,[3] the final version of the form noted that Ms. Williams was "voluntarily terminated for job abandonment and dissatisfaction." *Id.* at 7. Ms. Williams denied placing her employee identification badge under the office door and further denied that she voluntarily resigned her position in a conversation with Mr. Blewett, but was told that her employment would remain terminated. (ECF No. 1 at 7; 53–1 at 5–6).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden "to demonstrate the absence of any genuine dispute of material fact." *Jones v. Hoffberger Moving Servs. LLC*, 92 F.Supp.3d 405, 409 (D. Md. 2015) (internal citations omitted). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.35 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party, *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)), but

---

[3] Ms. Williams asserts that the Employee Separation Notice form contains individual boxes to indicate "voluntary resignation" or "involuntary resignation." She further asserts that Ms. Jalloh originally left both boxes blank, and Ms. Litterini later filled in the box for "voluntary resignation" after Wexford received notice that Ms. Williams had applied for unemployment benefits. (ECF Nos. 53–1 at 6–8). Ms. Williams also claims that Ms. Jalloh originally listed "absenteeism/tardiness," "failure to return from leave," and "misconduct" as reasons for her termination, although the final version of the Employee Separation Notice lists only lists "dissatisfied with job" and "job abandonment" as termination reasons.

4

must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F.Supp.2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## III. DISCUSSION

In 1993, Congress passed the Family and Medical Leave Act to balance "workplace demands with family needs and personal health needs while accommodating the legitimate interests of employers and minimizing the potential for employment discrimination." *Neel v. Mid-Atlantic of Fairfield, LLC*, 778 F.Supp.2d 593, 596 (D. Md. 2011) (citing 29 U.S.C. § 2601(b)). Certain claims brought under the FMLA are referred to as "interference claims," pursuant to the statute's section that states, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Other FMLA claims are referred to as "retaliation claims" under a different section: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Id.* at § 2615(a)(2). In her Complaint, Plaintiff lodges both interference and retaliations claims under the FMLA against Defendants. (ECF No. 1). In their Motion for Summary Judgment, Defendants argue that they are entitled to summary judgment because Plaintiff cannot show that Wexford denied her FMLA benefits to which she was entitled nor can she show that her discharge was causally related to any protective activity under the FMLA. (ECF No. 46). Both of Defendants' arguments will be addressed in turn.

### A. Interference Claim

In Count 1 of her Complaint, Plaintiff alleges that Defendant interfered with her FMLA rights by denying her benefits to which she was entitled under the statute. Under the FMLA, eligible employees are entitled to twelve (12) weeks of leave during a twelve (12) month period for covered reasons, including care for a parent when the parent has a serious health condition. 29 U.S.C. § 2612(a)(1)(C). In order to establish unlawful interference with regard to entitlement to FMLA benefits, Plaintiff must prove: (1) she was an eligible employee; (2) Wexford, as her employer, is covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Wexford adequate notice of her intention to take such leave; and (5) Wexford denied her that leave as an FMLA benefit to which she was entitled. *Sherif v. Univ. of Maryland Med. Center*, 127 F.Supp.3d 470, 477 (D. Md. 2015) (citing *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F.Supp.2d 480, 495 (D. Md. 2013)). Plaintiff must also establish that Wexford's denial of leave "prejudiced [her] in some way." *Id.* (citing *Anderson v. Discovery Commc'ns, LLC*, 517 Fed.Appx. 190, 197–98 (4th Cir. 2013)). Such prejudice can be proven by a showing that she lost compensation or benefits, sustained other monetary losses, or suffered some loss in employment status. *Ranade v. BT Americas, Inc.*, 581 Fed. Appx. 182, 185 (4th Cir. 2014).

In their Motion, Defendants seem to concede the first three prongs of Plaintiff's burden: that Plaintiff is an eligible employee, that Wexford is covered by the FMLA, and that Plaintiff is entitled to leave under the FMLA. Defendants dispute that Plaintiff provided adequate notice, essentially arguing that because Plaintiff's mother's appointment was a scheduled one, Plaintiff's call at 9 p.m. the evening before the appointment does not constitute adequate notice.[4] (ECF No. 46–1 at 9). Plaintiff, however, has testified that she was only made aware at 8 p.m. that her brother (who had scheduled the appointment and planned to accompany Plaintiff's mother to it)

---

[4] It is not entirely clear from the pleadings whether Defendants contend Ms. Williams's call happened at 9 p.m. or 10 p.m.

was no longer available. (ECF No. 53–1 at 3). Viewing the facts in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that the notice to Defendants was inadequate as a matter of law.

Defendants' second argument is premised upon the assertion that Plaintiff was never denied the leave that she requested and therefore cannot meet her burden of demonstrating prejudice. Defendants argue that Plaintiff was allowed the requested leave, as evidenced by the voicemail Ms. Jalloh left for Plaintiff on the morning of March 16, 2017. For her part, Plaintiff argues that Ms. Jalloh never explicitly granted her request and that Ms. Agbayi explicitly denied her request. (ECF No. 53–1 at 10 – 11). Plaintiff further claims she has suffered prejudice due to her subsequent termination and resulting lost wages.

Defendants repeatedly cite to Ms. Jalloh's voicemail as proof that Defendants allowed the leave that Plaintiff requested. However, Ms. Jalloh's voicemail only substantiates Plaintiff's claim that she was told not to report back to work until she had a meeting with Ms. Jalloh, and does not at all support Defendants' assertion that Ms. Jalloh approved Plaintiff's request for FMLA leave. The voicemail does not actually mention the leave that Plaintiff requested, other than to reiterate, three separate times, that "[Ms. Williams] cannot return back to work today," March 16, 2017. (Ex. 1 to Decl. of Aminata Jalloh, ECF No. 46–2). Plaintiff herself claims that Ms. Agbayi explicitly denied her the requested leave. Considering the facts in the light most favorable to the nonmovant, a clear dispute of material fact exists as to whether Plaintiff was actually granted the requested FMLA leave during her conversations with Ms. Jalloh and Ms. Agbayi.

Defendants also assert that Plaintiff voluntarily resigned by failing to report to work for three days and leaving her identification badge under Ms. Jalloh's door. They cite Plaintiff's

7

deposition testimony to prove that Plaintiff knew that Ms. Jalloh never told her not to come to work and that Plaintiff was unable to return to work only because she lost her employee identification badge. (Dep. of Trina Williams, ECF No. 46–4 at 68). However, Defendants fail to cite the portion of Plaintiff's testimony in which she states, "When I talked to [Ms. Jalloh] on my phone, she left me a message, again, saying 'Trina, do not report back to work until we meet.' So, that means do not come back to work until we meet." *Id.* at 69. Plaintiff also asserts that she called Ms. Jalloh to finalize a time for that meeting and was never called back. *Id.* at 65–66. And, upon further questioning as to why Plaintiff did not simply report to Wexford to obtain a replacement employee identification badge so that she could return to work, Plaintiff responded, "Because of the simple fact that [Ms. Jalloh] told me, 'Do not come to work until we meet and talk.'" *Id.* at 76–78. This is supported by the audio recording of the voicemail Ms. Jalloh left for Plaintiff, explicitly telling her not to come to work on March 16, and that she should not return to work until she met with Ms. Jalloh on March 17 at a time to be mutually determined. (Ex. 1 to Decl. of Aminata Jalloh, ECF No. 46–2).

Thus, despite Defendants' reliance on Plaintiff's deposition testimony where "Plaintiff has unequivocally admitted that Ms. Jalloh did not tell her to not report to work after she took FMLA leave," Plaintiff's testimony and the voicemail left by Ms. Jalloh present a dispute of material fact as to whether her request for leave was, in fact, granted, as well as the circumstances surrounding Plaintiff's separation. Therefore, summary judgment on Plaintiff's interference claim is inappropriate.

  B.  **Retaliation Claim**

Under the FMLA, the distinction between an interference claim and a retaliation claim "is not always clear." *Edusei v. Adventist Healthcare, Inc.*, Civ. No. DKC–13–0157, 2017 WL

8

3345051, at *6 (D. Md. July 7, 2014). A retaliation claim differs from an interference claim in that "the interference claim merely requires proof that the employer denied the employee [her] entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent" on the part of the employer. *Sherif v. Univ. of Maryland Med. Center*, 127 F.Supp.3d 470, 477 (D. Md. 2015) (quoting *Bosse v. Baltimore Cnty.*, 692 F.Supp.2d 574, 588 (D. Md. 2010)). "To survive an employer's motion for summary judgment, a plaintiff must show direct evidence of discrimination, or establish a *prima facie* case that raises an inference of illegal conduct." *Id.* at 489 (citing *Coleman v. Maryland Court of Appeals*, 626 F.3d 178, 190 (4th Cir. 2010)).

Because FMLA retaliation claims are analogous to Title VII retaliation claims, FMLA retaliation claims are analyzed under the burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973). *See, e.g., Adams v. Wallenstein*, 814 F.Supp.2d 516, 524 (D. Md. 2011); *Ranade v. BT Americas, Inc.*, 581 Fed. Appx. 182, 183 (4th Cir. 2014). Under the framework, the employee plaintiff must establish a prima facie case that (1) she engaged in protected activity under the FMLA; (2) the employer defendant took adverse action; and (3) the adverse action was causally connected to the employee plaintiff's protected activity. *Adams*, 814 F.Supp.2d at 524 (citing *Jordan v. Radiology Imaging Assocs.*, 577 F.Supp.2d 771, 786 (D. Md. 2008)). The burden then shifts to the employer, who must provide a non-retaliatory explanation for the adverse action, at which point the burden shifts back to the employee to establish "that the employer's proffered explanation is a pretext for FMLA retaliation." *Id.*

Defendants argue that Plaintiff "cannot show that her discharge was causally related to any protected activity under the FMLA," and also that, even if she could make such a showing, "Wexford has provided a legitimate reason for her employment separation—her failure to return

9

to work after taking leave." (ECF No. 46–1 at 12). Defendants cite to Wexford's Maryland Region Time and Attendance Guidelines to explain that when an employee has failed to report to work on three instances, that employee is considered terminated. *Id.* at 12. According to Defendants, "[p]ut simply, Plaintiff failed to return to work after her need for leave expired" and "[h]er failure in this regard clearly provided legitimate justification for her employment separation for job abandonment." *Id.* at 13. Plaintiff argues that it is undisputed that she engaged in the protected activity of requesting leave and that her termination constitutes adverse employment action. While Plaintiff admits this Court has held that "it is well established that discharging an employee, who fails to report to work is a valid, nondiscriminatory reason for termination," Plaintiff argues she was specifically told not to return to work by Ms. Jalloh until they had a meeting—a meeting that Plaintiff has testified she tried to schedule and confirm to no avail—and therefore Defendants' non-discriminatory explanation for her termination is not sufficient. (ECF No. 53–1 at 13–14).

Defendants could be considered responsible for Plaintiff's failure to report to work in the days after she requested leave for many of the reasons previously explained by the Court. Defendants themselves offer Ms. Jalloh's voicemail, left for Plaintiff, as proof that her leave request was granted. (Ex. 1 to Decl. of Aminata Jalloh, ECF No. 46–2). In that voicemail recording, Ms. Jalloh can be heard telling Plaintiff explicitly, three separate times, that she cannot return to work until she meets with Ms. Jalloh, a meeting that Plaintiff claims she was never able to confirm despite her good faith attempts to do so. Interestingly, Defendants' only proffered non-pretextual reason for Plaintiff's termination is that Plaintiff *voluntarily* did not return to work, despite Plaintiff's assertion that Ms. Jalloh did not return her subsequent calls and text messages, including attempts at communication on the days that she did not report to work,

10

and that she therefore was not *allowed* to return to work. *Cf. Whitt v. R&G Strategic Enterprises, LLC*, Civ. No. RDB–16–2492, 2018 WL 398289, at *6 (D. Md. Jan. 11, 2018) (describing FMLA interference and retaliation cases in which the defendants argued the employees had actually been terminated for not adequately performing their roles). For the same reasons previously explained in regards to Plaintiff's interference claim, a clear factual dispute exists as to whether Plaintiff abandoned her job or Defendants terminated her based on her request for FMLA leave, making summary judgment equally inappropriate for Plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, (ECF No. 46), is DENIED. A separate Order shall follow.

Dated: September 7, 2018 /s/
J. Mark Coulson
United States Magistrate Judge